Michael A. Nelson, P.C.
Michael A. Nelson, Esq.
ID No. 025181988
P O Box 1240
10 W. Main Street
Freehold, NJ 07728
(732) 276-5708
Attorney for Plaintiffs,
Sarah Prioli, &
Elizabeth Clarke

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SARAH PRIOLI**, an individual; **ELIZABETH CLARKE**, an individual; and **NICOLE HORAN**, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF OCEAN; SANDRA MUELLER,** individually and in her Official Capacity as Warden; **JOSEPH VALENTI** individually and in his Official Capacity as Deputy Warden; **JOHN HABERBUSH,** individually and in his Official Capacity as Captain; **JOSHUA DICKINSON**, individually and in his Official Capacity as Lieutenant;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.<br><br>   **COMPLAINT DEMAND FOR JURY TRIAL AND LOCAL RULE 11.2 <u>CERTIFICATION</u>** |

Plaintiff Sarah Prioli, residing at 15 Cedar Court, Jackson, New Jersey 08527, Elizabeth Clarke residing at 655 Anderson Road, Jackson, New Jersey 08527, and Nicole Horan, residing at 1229 Aquarius Court, Forked river, New Jersey 08731 (collectively the "Plaintiffs"), by and through undersigned counsel, bring this action against defendants County of Ocean, whose corporate address is 101 Hooper Avenue, Toms River, New Jersey 08753, Warden Sandra Mueller, whose corporate address is 101 Hooper Avenue, Toms River, New Jersey 08753, Captain John Haberbush, whose corporate address is 101 Hooper Avenue, Toms River, New Jersey 08753, Deputy Warden Joseph Valenti, whose corporate address is 101 Hooper Avenue, Toms River, New Jersey 08753, and Lieutenant Joshua

Dickinson whose corporate address is 114 Hooper Avenue, Toms River, New Jersey 08753 (collectively, the "Defendants"), and state as follows:

## I. NATURE OF THE ACTION

1. This action arises as a result of a systemic, continuous pattern and practice of gender discrimination, hostile work environment and/or retaliation against the Plaintiffs by County of Ocean ("Ocean") employees at the Ocean County Department of Corrections, ("OCDC"), with the assistance of the individual defendants who knowing and intentionally aided and abetted Ocean in its discriminatory policies and practices which have deprived and continue to deprive Plaintiff of equal employment in violation of is brought under 42 U.S.C. § 1981 (Section 1981), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, N.J. Stat. §10-5, et seq. ("the New Jersey Law Against Discrimination"). Plaintiff seeks injunctive relief and other equitable relief, as well as compensatory and punitive damages based upon Defendants' continued violation of Plaintiffs' rights under federal and state laws.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter pursuant to pursuant to 28 U.S.C. § § 1331, which confers original jurisdiction upon this Court in civil actions arising under the Constitution and laws of the United States and pursuant to U.S.C. 134394) which confers original jurisdiction upon this Court in actions to secure equitable or other relief under, and Act of Congress providing for the protection of civil rights. Pursuant to 28 U.S.C. § 1367 this Court has supplemental jurisdiction over Plaintiffs' State law claims.

3. Venue is proper in this District pursuant (i) 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (ii) because Defendants' unlawful employment practices have been committed in this District, and the employment records relevant to these practices are maintained and administered in this District.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiffs, Sarah Prioli, Elizabeth Clarke and Nicole Horan have exhausted their administrative remedies in accordance with 42 U.S.C. 2000e5(f)(3). Each of these Plaintiffs filed charges with the U.S. Equal Employment Opportunity Commission (the "EEOC"), and on October 16, 2017, the EEOC issued each of these Plaintiffs a notice of right to sue.

## III. THE PARTIES

### A.  The Plaintiff

5. Plaintiff Sarah Prioli ("Prioli") at all times relevant to this Complaint is a resident of the State of New Jersey; she has been an Ocean County employee since May 16, 2011. Prioli is currently a Sergeant with OCDC.

6. Plaintiff Elizabeth Clarke ("Clarke") at all times relevant to this Complaint is a resident of the State of New Jersey; she has been an Ocean County employee since September 9, 1994. Clarke is also currently a Sergeant with OCDC.

7. Plaintiff Nicole Horan ("Horan") at all times relevant to this Complaint is a resident of the State of New Jersey; she has been an Ocean County employee since September 6, 2007. Horan is also currently a Sergeant with OCDC.

### B. The Defendants

8. County of Ocean is a county in the State of New Jersey and owns, operates, manages, directs and controls Ocean County Department of Corrections which employs defendants Warden Sandra Mueller, Deputy Warden Joseph Valenti, Captain John Haberbush, and Lieutenant Joshua Dickinson,

9. Defendant Sandra Mueller, is and was at all times relevant to this Complaint is a County employee as Warden of the Ocean County Department of Corrections.

10. Defendant Joseph Valenti, is and was at all times relevant to this Complaint is a County employee as Deputy Warden of the Ocean County Department of Corrections.

11. Defendant John Haberbush, is and was at all times relevant to this Complaint is a County employee as Captain with the Ocean County Department of Corrections.

12. Defendant Joshua Dickinson, is and was at all times relevant to this Complaint is a County employee as a Lieutenant with the Ocean County Department of Corrections.

## IV.  GENERAL ALLEGATIONS

### A.  Introduction

13. According to its current website, OCDC is the "main custodian of all adult offenders arrested for violations of laws within the County of Ocean". OCDC and its employees' primary responsibility is to provide for the "safety, welfare and control of all inmates within the Ocean County Jail". Additionally, OCDC "provides internal and external security for the jail facility as well as for the citizens in the surrounding community at large".

14. OCDC is the custodian for both male and female inmates, and as such OCDC has male employees to care for the safety, welfare and control of the female and male inmates, and female employees to care for the safety, welfare and control of the female and male inmates.

15. The inmate population is mostly divided according to security threat thereby providing minimum security, medium security and maximum security, each housed separately.

16. The officers within the operational structure of OCDC consists of Officers, Sergeants, Lieutenants and Captains. Each titled according to Civil Service examination that each individual passed. Plaintiffs are all Sergeants.

17. Male and female Officers, Sergeants and Lieutenants are shift workers. Each shift consists of male and female Officers, Sergeants, Lieutenant and Captains, who are responsible for inmate intake, booking, emergencies and discipline. Captains do not work night shfts.

18. The information pertaining to each Officer, Sergeant, Lieutenant and Captain's actions during his or her shift is recorded in a log and reviewed by superior officers. The entire operation

produces data for the security and safety of inmates, as well as the actions of Officers, Sergeants, Lieutenants and Captains pertaining to the management of OCDC.

19. The reporting structure at the jail for all officers follows the basic chain of command. Officers report to Sergeants, Sergeants report to Lieutenants, Lieutenants report to Captains, and Captains report to Deputy Warden, Deputy Warden reports to Warden, and Warden to the County.

20. Inmate intake, booking, emergencies and discipline have no allotted time frame. The time it takes to conduct an intake, booking or an emergency depends on the cooperation of the inmate. Hence, a belligerent inmate can take several hours to process, whereas a cooperative inmate may be completed on one hour.

**B.   Discrimination, Disparate Treatment and Hostile Work Environment**

21. Each of the female Plaintiffs in this action is a long-term employee at OCDC ranging from 23 years to seven years.

22.  Over the years they endured and continue to endure a continuous pattern of intentionally demeaning and derogatory conduct designed to erode both their ability for advancement within OCDC and to destroy their ability to work in a professional environment.

23. Plaintiffs worked and continue to work in an environment where formal requests for equity between male and female workers results in retaliation such as more difficult work schedule, verbal and written humiliation, and intimidation of job loss or denial of promotion.

24. To begin with, OCDC scheduling practices are not applied fairly and uniformly to all officers. Scheduling is done through unofficial, clandestine procedures in which scheduling officers select their preferred officers, sergeants and lieutenants without any true attempt to ensure equity in scheduling among the officers and between the genders. When the schedule is prepared, the process of selecting late shift officers is inequitable and subject to abuse. Each of

the female Plaintiffs has suffered from the unfairness of scheduling because OCDC

management.

25. OCDC scheduling officers, Captains, has used the process disproportionately to give Plaintiffs

unfair scheduling, by scheduling Plaintiff for late shifts and weekends, while other officers

have easier schedules.

26. Over the years, the female Plaintiffs have endured an environment in which the following

types of discriminatory behavior and treatment were allowed to flourish:

- OCDC management recognizes and promote male officers personal and professional concerns, while downplaying or ignoring those of female officers.

- OCDC management knows that the ratio of female sergeants to female inmates is disproportionately higher than male sergeants to male inmates resulting in unfair practices to the female sergeants.

- OCDC management has downplayed or ignored complaints of female sergeants who were harassed.

- OCDC management has fabricated instances where it is alleged that female sergeants refused to perform their duties in order to creating a hostile environment for the female sergeants.

- OCDC management hold female sergeants responsible for incidents on their floor after removing them to conduct a search of a female inmate, and having male sergeants supervise the floor in their absence.

- OCDC management holds female sergeants to a greater requirement of performance or require female sergeants to perform more work than male sergeants.

- OCDC management ignores actions of male sergeants who abuse their authority on female officers, and fail to recognize that male employees are treated differently from similarly situated female employees.

- OCDC management disregards reporting protocol for male sergeants while enforcing reporting protocol for female sergeants.

- OCDC management permits some officers to dress outside of the uniform policy whereas other officers must follow the uniform policy.

- OCDC management refuse to allow a female officer on the midnight shift to work at particular post because male officers might dislike too many females at the post.

- OCDC management refuse to investigate complaints made by female sergeant but investigate male officer's complaints with all deliberate speed.

- OCDC management disregards bidding for shift and days-off based upon seniority by showing favoritism to particular supervisors, and retaliating against officers who complain about discriminatory treatment.

- OCDC victimizes female sergeants who complain about discriminatory treatment in performance of their job, while granting training that would provide better employment opportunities to others.

- OCDC management condones an atmosphere of intimidation against female officers that pervades the building. There is the fear that failure to conform to the accepted discriminatory policies and practices will result in severe retaliation, and complaining of unfair practices will result in severe retaliation.

- OCDC management, since the filing of the EEOC complaint, has retaliated against Plaintiffs by intentionally manipulating the work shifts and days-off such that Plaintiffs are denied weekends off.

27. Each of the female Plaintiffs work in an environment where they have been subjected to relentless and repeated expressions of overt, sexual derogatory behavior exemplified by the following instances:

- While at roll call on the midnight shift Lieutenant Zentzis openly criticizes Plaintiff Prioli about her appearance with grey hair.

- Lieutenant Henderson, openly sexually remarked that he knew Prioli had her cell phone in her shirt pocket because he was staring at her tits and saw the outline in her shirt pocket; Prioli had a pack of gum in her pocket.

- From the inception of her Academy Training Plaintiff Horan was asked by Drill instructor Snead does she "suck dick" or does she "fuck black men".

- Plaintiff Horan experienced further sexual harassment from Instructor Snead during inclined push-ups exercises when he required her to place her feet on his shoulder while she did push-ups. Contrary to Academy policy Plaintiff Horan should have had a female partner.

- Instructor Snead hung around the female locker room waiting for Plaintiff Horan to exit. He made her duck under his arm to get pass him. On other occasions Snead would follow Plaintiff Horan to her car and intimidated her. On one occasion he was present when she noticed that she had a flat tire. She did not attempt to change it around him but instead drove with the flat tire onto the New Jersey Parkway and then requested help.

- During security checks in the pipe chases, on the roof, and in the bathrooms Plaintiff Horan saw remarks and expressions about female officers such "bacon fat back", "pig vomit", and "everyone gets a turn". These remarks regard particular officers whose CO numbers are next to the remarks.

- On more than one occasion Plaintiff Horan spoke to Captain Valenti about officers whose performance was not satisfactory. Valenti refused to take action and eventually minimizing Plaintiff Horan concerns at a meeting by telling her "We all can't be Superwoman".

- Plaintiff Horan experienced abuse of official discretion when she was ordered to work mandatory overtime. Other Sergeants were present on the shift who were available to work the split-overtime, but the supervisor did not require the male sergeant to work the split-overtime but required Horan to do the entire shift.

- At the directions of Captain Valenti, Plaintiff Horan was directed to speak with Lieutenant Zentzis. During the conversation with Lieutenant Zentzis, Plaintiff Horan was told "that's your biggest problem. You are too much of an Alpha Male and you talk too much".

- On several occasions Plaintiff Horan wrote reports identifying problems she encountered during her shift. During the submission of one of the reports regarding Sergeant Pressley, Lieutenant Archibald told Plaintiff Horan she needs to think about the submission of the report.

- The ratio of male inmate to male officers is smaller than female inmate to female officers, even though there are more male inmates than female inmates.

- The OCDC management maintain its retaliatory action against Clarke by forcing her to perform mandatory overtime while others officers are available who did not have mandatory overtime.

- OCDC management consistently requires Clarke to do the work of an Officer knowing she is one of the most senior Sergeants, while junior sergeants are not required to do so.

- Senior officers to whom Clarke complained about Pressley's harassment have ignored her complaints and ultimately create hostile work environment for Clarke.

- Supervising officers conduct regarding Clarke's request to eliminate the harassment and hostile work environment is to tell her "do what you can and sit back"; action if implemented by Clarke would result in Clarke being reprimanded.

28. Ocean's continuous condoning of this hostile working environment has created a situation

where male workers feel secure that even the most egregious discriminatory conduct towards

female workers will be overlooked, excused, disbelieved, or labeled as the grievance of a

disgruntled employee; furthermore, male workers feel free to retaliate against those who oppose discriminatory practices at OCDC.

29. During Plaintiffs' employment at OCDC there has been utterly futile polices against gender discrimination and harassment in the workplace. This futility was a result of OCDC' failure to regularly, efficiently and effectively disseminate its policies (to the extent that they existed) to the institution's employees.

30. Additionally, since the Plaintiffs have been in OCDC employ, there has not been a realistic, effective procedure for training employees, including management, in the deterrence, identification, prevention, and reporting of gender discrimination, harassment and retaliation, for objection to discriminatory actions. Moreover, there has not been an effective process for the investigation or addressing of discrimination /harassment complaints promulgated to the institution. To the extent that such procedures exist, the female Plaintiffs attempted to take advantage of them, but OCDC did not follow their own alleged procedures.

31. Regardless of the lack of valid, enforced procedures, over the past 3 years, female employees at OCDC have become increasingly vocal about OCDC's unfair employment practices. OCDC responded with a series of meaningless initiatives (when they have responded) which have done nothing to address issues of gender discrimination.

32. There have been no diversity initiatives by OCDC to address gender discrimination.

**C.  Claims Filed with the EEOC**

33. Plaintiff have filed grievances regarding the discriminatory actions of supervisors who continually disregard Plaintiffs' civil rights. Defendants' responses to the grievances was to disregard Plaintiffs' concerns. On or about June 16, 2016, Plaintiffs filed a complaint with EEOC regarding the discriminatory practices at OCDC.

34. OCDC has retaliated against each of the female Plaintiffs for their complaints regarding discrimination.

## V. PLAINTIFF'S INDIVIDUAL ALLEGATIONS

### A.      Sarah Prioli

35. On May 16, 2011, Prioli began working for Ocean as an Officer in the Ocean County Jail.

36. During her tenure Prioli openly criticized OCDC's discriminatory actions, and her career has suffered as a result of her forthrightness. In fact, Lt. Zentzis, Prioli's superior officer, inappropriately, openly commented on her appearance with the intent to humiliate her in public.

37. On another occasion Prioli was subject to Lt. Henderson's sexual harassment when he admitted to staring at her tits as he observed an outline in her shirt pocket.

38. Despite her education, extensive work experience, above average work performance, and promotion from Officer to Sergeant, Prioli continues to perform job duties of an Officer rather than the supervisory duties of a Sergeant.

39. Prior to Prioli promotion to sergeant, Captain Valenti now Deputy Warden Valenti, who was entrusted with the administration of the county jail remarked that Prioli "might not find this funny, but I said to Sgt. Pluta that the last thing you got to tell your dad before he died was that you have gotten skipped (over) for sergeant for him. Then I told him that your dad's probably going to haunt him now because of it". Even though Prioli had scored better than Pluta on the Civil Service Corrections Sergeant Exam she was passed over.

40. Female workers who challenge discriminatory actions within OCDC are without recourse and often are retaliated against by superior officers who manage the county jail.

41. Prioli was and is constantly harassed by Sgt. Pressley in the course of her employment creating a hostile work environment. Prioli complained on several occasions to Capt. Haberbush about the harassment and nothing was done by her superior officers. Eventually, Prioli sent her subsequent report of Pressley's harassment to the Warden's office for which she was reprimanded by Deputy Warden Valenti.

42. Prioli experienced arbitrary and discriminatory action of Lt. Dickinson by changing the booking procedures, and in so doing negated four years practice in booking for the sole reason of permitting Sgt. Pressley arbitrary actions.

43. After Prioli, Clarke and Horan filed a grievance about the discriminatory treatment they experience with the scheduling and days-off, they received a retaliatory email from Capt. Haberbush falsely accusing them of failing to perform a strip search on a female inmate.

44. Despite Lt. Burns informing Capt. Haberbush that Prioli, Clarke and Horan were unaware of the request to strip search he nevertheless sent the email about their dereliction of duties. Moreover, on the day in question Clarke was off duty and could not have been held responsible.

45. On numerous occasions Prioli was and is forced to work mandatory overtime because senior administrators intentionally neglect to create a schedule that would avoid consistent mandatory overtime for Prioli by scheduling officers on her shift.

46. On several occasions Prioli have been made to perform duties of an Officer. Her promotion to Sergeant requires her to perform more supervisory duties than that of an Officer while on her shift. Yet, senior administration officer with scheduling duties and responsibilities intentionally neglect to schedule Officers to perform strip search of female inmates, and in so doing Prioli is required to performs strip searches of female inmates, the responsibility of an Officer.

47. On more than one occasion while Prioli was performing the duties of a supervisor on her floor she left her post to perform the strip search of an inmate. This requires someone else to supervise the floor. On several occasions a male supervisor will cover the floor. On her return to her supervisory post Prioli is often confronted by situations that should have been handed by the male supervisor, but they were not.

48. Male supervisors do not have to conduct strip searches and are not made to do double work on their floors.

49. Prioli continues to experience retaliation for the filing of her grievance. The scheduling of shifts and days-off are based on seniority. Although, Prioli's seniority should give her bidding rights to shift and days off before Sgt. DeMarco, DeMarco continually receive more favorable shifts and days off.

50. As a result of Prioli's outspokenness to correct the discriminatory actions at OCDC, she is retaliated against by management. OCDC management sent other female sergeants who did not file grievances to various training programs while Prioli, Clarke and Horan are not.

**B. Elizabeth Clarke**

51. On September 9, 1994, Clarke began her employment with OCDC as an Officer in the County Jail.

52. During her tenure Clarke silently, endured hostility and harassment that caused her career to suffer.

53. Clarke's fear of retaliation by OCDC management was so strong that she knew complaining to management could ultimately lead to loss of employment, a circumstance she could not afford as a single parent.

54. Clarke to openly accept the discriminatory policies and practices against herself and female officers while she worked and continue to work in an environment that degraded, humiliated and stifled her.

55. From the inception of her employment with OCDC Clarke was one of the few females who worked in the county jail. For twenty-three years she witnessed women struggle for equality, and mostly those who openly accepted sexual harassment and hostility were granted employment opportunities. Others remained powerless and vulnerable to OCDC management.

12

56. Clarke's witnessed OCDC management practice change from the use of female Officers who were held over from previous shifts to conduct strip search of female inmates, to forcing a few female Sergeants to perform strip search of female inmates, a duty that is assigned to female Officers.

57. Clarke witnessed other female Sergeants, Sergeants Paden and Calvert, who worked the same shift as her but who did not grieve the discriminatory practice avoid strip searching of female inmates and openly state "their job is to supervise and not to strip prisoners". But Clarke, Horan and Prioli are required to conduct strip searches of female inmates.

58. Clarke endured the demeaning treatment of management at OCDC in order to maintain her employment but sought professional counseling to cope with inequities between male and female officers, and to cope with the hostility and harassment.

59. Sergeant Pressley openly advocated against other female Sergeants performing strip searches of female inmates by telling the female Sergeants it was not their job to conduct strip searches, while he remained silent as Clarke performed strip searches even though she is a sergeant.

60. OCDC management, Captain Zentzis, again punished Clarke by removing her from the booking post for two days against the request of her supervisor Lt. Burns to keep her at the post. Zentzis' action was pure arbitrary and in retaliation for her grievance against OCDC.

61. More recently, Clarke continue to experience the intentional acts of discrimination by OCDC management to ensure that female officers are punished for asserting their rights against gender discrimination, and for seeking to redress the right to equal employment opportunity within OCDC.

62. As a grievant against the scheduling and days-off that benefits male officers, OCDC management retaliates against Clarke by forcing her to perform mandatory overtime while others are excused from mandatory overtime.

63. OCDC management reinforces a practice that females who enter the workforce as officers of county jail will be punished by being given greater time away from their families, forced to work mostly night shifts and be away from their families, or work double shifts at night and spend less time with their families should they oppose discriminatory practices.

64. Even as a senior officer on the night shift Clarke is required to perform mandatory overtime while less senior officers are permitted to go home to their families.

65. Clarke's fear of retaliation by her immediate supervisor required her to take her complaint about Sergeant Gerald Higgins directly to her then superior officer Sandra Mueller. Mueller refused to act on her complaint. OCDC manage resolved the harassment Clarke experienced by Higgins by promoting him and remark that Clarke was no longer required to work with him.

66. While Clarke was working in booking on many occasions she was openly embarrassed and humiliated by Lieutenant Tony Spena in the presence of outside agencies and inmates. Clarke complained and Lieutenant Kenneth Martin told Clarke to apologize to Spina or she would be removed as a training instructor. In order to maintain her position as training instructor Clarke apologized.

67. Clarke also was subjected to Snead's sexual harassment during her time as an officer with the drug court bracelet program. Her previous experience of complaining to OCDC management that resulted in her apology to her harasser left her with no opportunity to report Snead. Clarke remained silent on the job and pursued counseling to cope; she continues to receive therapy.

68. On numerous occasions Clarke was and is forced to work mandatory overtime because senior administrators intentionally neglect to create a schedule that would avoid consistent mandatory overtime for Clarke.

69. On several occasions Clarke has been made to perform duties of an Officer. Her promotion to Sergeant requires her to perform more supervisory duties than that of an Officer while on her

shift. Yet, senior administration officer who have scheduling duties and responsibilities would schedule Clarke shift without a female Officer such that she performs strip searches of female inmates, a duty of an Officer.

70. On more than one occasion while Clarke was performing the duties of a supervisor on her floor is required to perform duties of an Officer, a male supervisor will cover the floor. On her return to the floor Clarke is often confronted by situations that should have been handed by the male supervisor, but it is not.

71. Male Sergeants who supervise do not have to conduct strip searches and are not made to do double work on their floors.

72. As a result of Clarke's outspokenness to correct the discriminatory actions at OCDC, she is retaliated against by denying her employment opportunities while other similarly situated employees are given greater employment opportunities.

### C. <u>Nicole Horan</u>

73. Nicole Horan began her employment with OCDC on September 6, 2007, as an Officer at the county jail.

74. During her tenure Horan openly criticized OCDC's discriminatory actions, and as a result of her outspokenness her career has suffered. In fact, Horan' s humiliation and dehumanization from the time she joined the Academy.

75. Horan's drill instructor Snead asked Horan whether she "suck dick" or whether she "fucks black me" right at the beginning of her employment.

76. Like Clarke and Prioli, Horan was required to make a choice between securing her job or reporting Snead and most likely getting terminated. She chose her job.

77. Horan's choice gave Snead the green light to continue sexually harassing her by instructing her to place her feet on his shoulder during push-ups; Academy policy required Horan to have a female partner but she did not have one.

78. On another occasion Horan was forced to duck under Snead's arm in order to exit the locker room. Snead's intimidation persisted throughout Horan's training; and she endure it just as Prioli and Clarke did to keep their jobs.

79. Horan witnessed the open display of sexual harassment of women workers at OCDC. During her security checks on the roof she saw written remarks about female officers such as "bacon fat back", "pig vomit" and "everyone gets a turn". Next to each remark is the CO number of the female officer publicizing the dehumanization of the female officer.

80. As a senior officer, Sergeant Horan informed Captain Valenti regarding the unsatisfactory performance of some workers and expects him to take action against the worker. Valenti responds to Horan at a supervisor's meeting by telling her "we all can't be superwoman", and disregards the complaint of unsatisfactory performance.

81. Like Prioli and Clarke Horan was ordered to work two consecutive mandatory overtime shifts while other sergeants were exempt.

82. On numerous occasions Horan was and is forced to work mandatory overtime because senior administrators intentionally neglect to create a schedule that would avoid consistent mandatory overtime for Horan.

83. On several occasions Horan have been made to perform duties of an Officer. Her promotion to Sergeant requires her to perform more supervising duties than that of an Officer while on her shift. Yet, senior administration officer who have scheduling duties and responsibilities would schedule Horan shift that she performs strip searches of female inmates, a duty of an Officer.

84. On more than one occasion while Horan was performing the duties of a supervisor on her floor is required to perform duties of an Officer, a male supervisor will cover the floor. On her return to the floor Horan is often confronted by situations that should have been handed by the male supervisor, but it is not.

85. Male supervisors do not have to conduct strip searches and are not made to do double work on their floors.

86. Horan continues to experience retaliation for the filing of the grievance. The scheduling of shifts and days off are based on seniority. Although, Horan's seniority should give her bidding rights to shift and days off before Sgt. DeMarco and Sgt. Ketelaar continually receive more favorable shifts and days off.

87. As a result of Horan's outspokenness to correct the discriminatory actions at OCDC, she is retaliated against by denying her employment opportunities while other similarly situated employees are given greater employment opportunities.

88. At all times relevant to this Complaint, the conduct of the defendants was willful, reckless and callous disregard of plaintiff rights under federal and state law.

89. As a direct and proximate result of the conduct of all the defendants, Plaintiffs suffered and continues to suffer physical and psychological harm, pain, and suffering, some or all of which may be permanent, and financial losses.

## CAUSES OF ACTION

## COUNT I

### Intentional Discrimination in Violation of Title VII
(by Plaintiffs against Defendant Ocean County)

90. Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

91. Ocean's supervisors and other agents have engaged in the pattern and practice of conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

92. Ocean intentionally discriminated against the Plaintiffs Clarke, Horan and Prioli in violation of 42 U.S.C. § 2000e *et seq*, by denying them equal employment opportunity and other professional/career advancement on the basis of their gender; by requiring Plaintiffs to perform

selected duties designated for Officers, whereas male Sergeants do not perform duties of Officers; and by denying the Plaintiff equal terms and conditions of employment.

93. As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT II

**Intentional Discrimination in Violation of Section 1981**
(by Plaintiff against Defendant Ocean)

94. Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

95. Ocean's supervisors and other agents have engaged in the pattern and practice of conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

96. In violation of Section 1981, Ocean has intentionally discriminated against the female Plaintiffs by a pattern of and practice of scheduling female Sergeants more than their comparative male Sergeants, and requiring them to perform the lower duties of an Officer whereas male Sergeants are not.

97. In violation of Section 1981, Ocean has intentionally discriminated against the female plaintiffs by denying them employment opportunities and other professional/career advancement on the basis of their gender, and denying the female plaintiffs equal terms and conditions of employment.

98. As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

99.

18

## COUNT III

**Intentional Discrimination in Violation of the New Jersey Law Against Discrimination**
(N.J.Stat. §10:5-1, *et seq.*)
(by Plaintiff against Defendant Ocean)

100.    Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

101.    Ocean's supervisors and other agents have engaged in the pattern and practice of conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

102.    In violation of N.J.S.A. §10:5-1, *et set.*, Ocean intentionally discriminated against the Plaintiffs Clarke, Horan and Prioli by a pattern of and practice of scheduling female Sergeants more than their comparative male Sergeants, and requiring them to perform the lower duties of an Officer whereas male Sergeants are not.

103.    In violation of N.J.S.A. §10:5-1, *et set.*, Ocean has intentionally discriminated against the female plaintiffs by denying them employment opportunities and other professional/career advancement on the basis of their gender, and denying the female plaintiffs equal terms and conditions of employment.

104.    As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli has suffered and continue to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT IV

**Hostile Work Environment in Violation of Section 1981**
(by Plaintiffs against Defendants Ocean)

105.    Plaintiff repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

106.    Ocean's supervisors and other agents have engaged in the pattern and practice of harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

107.     The discriminatory conduct described herein would not have occurred but for Plaintiff's gender.

108.     The harassing and discriminatory conduct described herein was severe and pervasive enough to both alter the Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Section 1981

109.     Ocean's harassing and discriminatory conduct constitutes a continuing violation of the Plaintiff's rights from the first act to the latest action.

110.     The harassing and discriminatory conduct described herein was open and notorious; Ocean knew or should have known about the harassing and discriminatory conduct towards the Plaintiffs.

111.     Ocean management failed to take adequate remedial steps to ensure that the Plaintiff would not be subject to continued gender harassment and discrimination at Ocean.

112.     Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the hostile working environment including, but not limited to:

a.     failing to have an effective policy regarding workplace harassment and discrimination;

b.     failing to have an effective procedure for investigation and addressing discrimination complaints;

c.     failing to effectively implement any procedure it may have had for investigating discrimination complaints;

d.     failing to adequately investigate the Plaintiffs' numerous complaints; and,

e.     failing to appropriately train its employees.

113.     As a result of Ocean's actions, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

114.     As a result of Ocean's intentional discrimination, Plaintiffs have suffered and continue to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT V

### Hostile Work Environment in Violation of Title VII
(by Plaintiffs against Defendants Ocean)

115.     Plaintiff repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

116.     Ocean's supervisors and other agents have engaged in the pattern and practice of harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

117.     The discriminatory conduct described herein would not have occurred but for Plaintiff's gender.

118.     The harassing and discriminatory conduct described herein was severe and pervasive enough to both alter the Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Title VII

119.     Ocean's harassing and discriminatory conduct constitutes a continuing violation of the Plaintiff's rights from the first act to the latest action.

120.     The harassing and discriminatory conduct described herein was open and notorious; Ocean knew or should have known about the harassing and discriminatory conduct towards the Plaintiffs.

121.     Ocean's management failed to take adequate remedial steps to ensure that the Plaintiff would not be subject to continued gender-based harassment and discrimination at Ocean.

122.     Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the hostile working environment including, but not limited to:

        a.     failing to have an effective policy regarding workplace harassment and discrimination;

21

      b.       failing to have an effective procedure for investigation and addressing discrimination complaints;

      c.       failing to effectively implement any procedure it may have had for investigating discrimination complaints;

      d.       failing to adequately investigate the Plaintiffs' numerous complaints; and,

      e.       failing to appropriately train its employees.

123.       As a result of Ocean's actions, Plaintiff has suffered and continues to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

124.       As a result of Ocean's intentional discrimination, Plaintiffs have suffered and continue to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT VI

**Hostile Work Environment in Violation of New Jersey Law Against Discrimination**
(by Plaintiffs against Defendants Ocean)

125.       Plaintiff repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

126.       Ocean's supervisors and other agents have engaged in the pattern and practice of harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

127.       The discriminatory conduct described herein would not have occurred but for Plaintiff's gender.

128.       The harassing and discriminatory conduct described herein was severe and pervasive enough to both alter the Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of N.J.S.A. §10:5-12, *et seq.*

129.       Ocean's harassing and discriminatory conduct constitutes a continuing violation of the Plaintiff's rights from the first act to the latest action.

130.    The harassing and discriminatory conduct described herein was open and notorious; Ocean knew or should have known about the harassing and discriminatory conduct towards the Plaintiffs.

131.    Ocean's management failed to take adequate remedial steps to ensure that the Plaintiff would not be subject to continued gender-based harassment and discrimination at Ocean.

132.    Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the hostile working environment including, but not limited to:

    a.    failing to have an effective policy regarding workplace harassment and discrimination;

    b.    failing to have an effective procedure for investigation and addressing discrimination complaints;

    c.    failing to effectively implement any procedure it may have had for investigating discrimination complaints;

    d.    failing to adequately investigate the Plaintiffs' numerous complaints; and,

    e.    failing to appropriately train its employees.

133.    As a result of Ocean's actions, Plaintiff has suffered and continues to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

134.    As a result of Ocean's intentional discrimination, Plaintiffs have suffered and continue to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT VII

**Retaliation in Violation of Section 1981**
(By Plaintiff against Defendant Ocean)

135.    Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

136.     Ocean's supervisors and other agents have engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

137.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean regarding gender discrimination.

138.     The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Section 1981.

139.     Ocean's retaliatory harassing and discriminatory conduct constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

140.     The retaliatory harassing and discriminatory conduct described herein was open and notorious; Ocean knew or should have known about the retaliatory conduct towards Plaintiff.

141.     Ocean management failed to take adequate remedial steps to ensure that the Plaintiff would not be subject to continued retaliation at Ocean.

142.     Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the retaliatory acts including, but not limited to:

    a.     failing to have an effective policy regarding workplace retaliation;

    b.     failing to have an effective procedure for investigation and addressing retaliation complaints;

    c.     failing to effectively implement any procedure it may have had for investigating retaliation complaints;

    d.     failing to adequately investigate Plaintiff' numerous complaints; and,

    e.     failing to appropriately train its employees.

143.     As a result of Ocean's actions, Plaintiffs suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

144.      As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli

have suffered and continues to suffer damages including, but not limited to, medical expenses,

opportunities for employment and advancement, loss of professional reputation, and physical,

mental and emotional distress.

## COUNT VIII

### Retaliation in Violation of Title VII
(by Plaintiff against Defendant Ocean)

145.      Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

146.      Ocean's supervisors and other agents have engaged in the pattern and practice of

retaliatory harassment and discriminatory conduct described herein while acting in the course,

scope, and furtherance of their agency and employment relationship with Ocean.

147.      The retaliatory hostile work environment and conduct described herein would not have

occurred but for Plaintiff's complaints submitted to Ocean regarding gender discrimination.

148.      The retaliatory harassing and discriminatory conduct described herein was severe and

pervasive enough to both alter Plaintiff's employment conditions and create an oppressive,

hostile, intimidating, and abusive working environment in violation of Title VII.

149.      Ocean's retaliatory harassing and discriminatory conduct constitutes a continuing

violation of Plaintiff's rights from the first act to the latest action.

150.      The retaliatory harassing and discriminatory conduct described herein was open and

notorious; Ocean knew or should have known about the retaliatory conduct towards Plaintiff.

151.      Ocean management failed to take adequate remedial steps to ensure that the Plaintiff

would not be subject to continued retaliation at Ocean.

152.      Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the

retaliatory acts including, but not limited to:

        a.      failing to have an effective policy regarding workplace retaliation;

b.      failing to have an effective procedure for investigation and addressing retaliation complaints;

c.      failing to effectively implement any procedure it may have had for investigating retaliation complaints;

d.      failing to adequately investigate Plaintiff' numerous complaints; and,

e.      failing to appropriately train its employees.

153.      As a result of Ocean's actions, Plaintiffs suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

154.      As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT IX

**Retaliation in Violation of the New Jersey Law Against Discrimination**
**(N.J.S.A. §1-:5-1, *et seq.*)**
(By Plaintiffs against Defendant Ocean)

155.      Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

156.      Ocean's supervisors and other agents have engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

157.      The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean regarding gender discrimination.

158.      The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Title VII.

159.     Ocean's retaliatory harassing and discriminatory conduct constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

160.     The retaliatory harassing and discriminatory conduct described herein was open and notorious; Ocean knew or should have known about the retaliatory conduct towards Plaintiff.

161.     Ocean management failed to take adequate remedial steps to ensure that the Plaintiff would not be subject to continued retaliation at Ocean.

162.     Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the retaliatory acts including, but not limited to:

   a.     failing to have an effective policy regarding workplace retaliation;

   b.     failing to have an effective procedure for investigation and addressing retaliation complaints;

   c.     failing to effectively implement any procedure it may have had for investigating retaliation complaints;

   d.     failing to adequately investigate Plaintiff' numerous complaints; and,

   e.     failing to appropriately train its employees.

163.     As a result of Ocean's actions, Plaintiffs suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

164.     As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT X

**Violation of the New Jersey Conscientious Employees Protection Act**
(By Plaintiffs against Defendant Ocean)

165.     Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

166.     Ocean's supervisors and other agents have engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

167.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to OCDC, EEOC and/or this Court regarding Clarke, Horan and Prioli's respective refusal to participate in gender discrimination.

*168.*     The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of N.J.S.A. §34:19-1, *et seq.*

169.     Ocean's retaliatory harassing and discriminatory conduct constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

170.     The retaliatory harassing and discriminatory conduct described herein was open and notorious; Ocean knew or should have known about the retaliatory conduct towards Plaintiff.

171.     Ocean management failed to take adequate remedial steps to ensure that the Plaintiff would not be subject to continued retaliation at Ocean.

172.     Ocean failed to take all reasonable and necessary steps to prevent and/or eradicate the retaliatory acts including, but not limited to:

        a.     failing to have an effective policy regarding workplace retaliation;

        b.     failing to have an effective procedure for investigation and addressing retaliation complaints;

        c.     failing to effectively implement any procedure it may have had for investigating retaliation complaints;

        d.     failing to adequately investigate Plaintiff' numerous complaints; and,

        e.     failing to appropriately train its employees.

173.     As a result of Ocean's actions, Plaintiffs suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

174.     As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XI

**Intentional Discrimination in Violation of Section 1981**
(by Plaintiffs against Defendants Mueller.)

175.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

176.     Mueller has engaged in the pattern and practice of conduct described herein in violation of Section 1981.

177.     As described herein, defendant Mueller was personally involved in the discriminatory conduct.

178.     As described herein, defendant Mueller cause the infringement of the Plaintiffs' rights under Section 1981.

179.     As described herein, defendant Mueller substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Section 1981.

180.     As a result of Mueller's violation of Section 1981, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XII

**Intentional Discrimination in Violation of Title VII**
(by Plaintiffs against Defendants Mueller)

181.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

182.     Mueller has engaged in the pattern and practice of conduct described herein in violation of Title VII.

183.     As described herein, defendant Mueller was personally involved in the discriminatory conduct.

184.     As described herein, defendant Mueller cause the infringement of the Plaintiffs' rights under Title VII.

185.     As described herein, defendant Mueller substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Title VII.

186.     As a result of Mueller's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XIII

**Defendants Mueller, Aiding and Abetting Employment Discrimination at Ocean in Violation of N.J.S.A. §10:5-12e**
(By Plaintiffs)

187.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

188.     Mueller has engaged in the pattern and practice of gender harassment, discriminatory conduct, and retaliation described herein, which caused injury to Plaintiffs in violation of New Jersey Law Against Discrimination.

189.     Through her conduct described herein Mueller aided, abetted, incite, compel and/or coerce the ongoing pattern and practice of gender harassment, discrimination, and retaliation at Ocean.

190.     Through her conduct described herein, Mueller knowingly and substantially assisted Ocean in its pattern and practice of racial harassment, discrimination and retaliation, and the resulting violation of New Jersey Law Against Discrimination.

191.     In her supervisory roles at OCDC, Mueller possess knowledge, control, influence and decision-making authority regarding employment practices at OCDC. As such, Mueller was aware of her role in the part of the illegal ongoing pattern and practice of gender harassment, discrimination, and retaliation to Ocean, and at the time they knowingly and substantially assisted Ocean in its pattern and practice of gender harassment, discrimination, and retaliation resulting in the violation of New Jersey Law Against Discrimination.

192.     As a result of Mueller's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XIV

### Retaliation in Violation of Section 1981
By Plaintiffs against Mueller)

193.     Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

194.     Defendants Mueller has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of her agency and employment relationship with Ocean.

195.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Section 1981.

196.     The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Section 1981.

197.     Defendant Mueller's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

198.     Mueller's retaliatory harassing and discriminatory conduct and other forms of retaliation described herein were open and notorious.

199.     As a result of Mueller's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

200.     As a result of the retaliation, Plaintiffs Clarke, Horan and Prioli have incurred and continues to incur damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and work experience.

## COUNT XV

### Retaliation in Violation of Title VII
By Plaintiffs against Mueller)

201.     Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

202.     Defendants Mueller has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of her agency and employment relationship with Ocean.

203.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Title VII.

204.     The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Title VII.

205.     Defendant Mueller's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

206.     Mueller's retaliatory harassing and discriminatory conduct and other forms of retaliation described herein were open and notorious.

207.     As a result of Mueller's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

208.     As a result of the retaliation, Plaintiffs Clarke, Horan and Prioli have incurred and continues to incur damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and work experience.

## COUNT XVI

**Intentional Discrimination in Violation of Section 1981**
(by Plaintiffs against Defendant Valenti.)

209.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

210.     Valenti has engaged in the pattern and practice of conduct described herein in violation of Section 1981.

211.     As described herein, defendant Valenti was personally involved in the discriminatory conduct.

212.     As described herein, defendant Valenti cause the infringement of the Plaintiffs' rights under Section 1981.

213.     As described herein, defendants Valenti substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Section 1981.

214.     As a result of Valenti's violation of Section 1981, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.


## COUNT XVII

### Intentional Discrimination in Violation of Title VII
(by Plaintiffs against Defendant Valenti.)

215.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

216.     Valenti has engaged in the pattern and practice of conduct described herein in violation of Title VII.

217.     As described herein, defendant Valenti was personally involved in the discriminatory conduct.

218.     As described herein, defendant Valenti cause the infringement of the Plaintiffs' rights under Title VII.

219.     As described herein, defendant Valenti, substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Title VII.

220.     As a result of defendant Valenti's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages

including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XVIII

### Defendants Valenti Aiding and Abetting Employment Discrimination at Ocean in Violation of N.J.S.A. §10:5-12e
(By Plaintiffs)

221.    Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

222.    Valenti has engaged in the pattern and practice of gender harassment, discriminator conduct, and retaliation described herein, which caused injury to Plaintiffs in violation of New Jersey Law Against Discrimination.

223.    Through his conduct described herein defendant Valenti aided, abetted, incite, compel and/or coerce the ongoing pattern and practice of gender harassment, discrimination, and retaliation at Ocean.

224.    Through his conduct described herein, defendant Valenti knowingly and substantially assisted Ocean in its pattern and practice of racial harassment, discrimination and retaliation, and the resulting violation of New Jersey Law Against Discrimination.

225.    In his supervisory roles at OCDC, defendant Valenti, possess knowledge, control, influence and decision-making authority regarding employment practices at OCDC. As such, defendant Valenti was aware of his role in the part of the illegal ongoing pattern and practice of gender harassment, discrimination, and retaliation to Ocean, and at the time he knowingly and substantially assisted Ocean in its pattern and practice of gender harassment, discrimination, and retaliation resulting in the violation of New Jersey Law Against Discrimination.

226.    As a result of defendant Valenti's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages

including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XIX

### Retaliation in Violation of Section 1981
By Plaintiffs against defendant Valenti)

227.    Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

228.    defendant Valenti has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

229.    The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Section 1981.

230.    The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Section 1981.

231.    defendant Valenti's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

232.    As a result of defendant Valenti s actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

233.    As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses,

opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XX

### Retaliation in Violation of Title VII
By Plaintiffs against Valenti)

234.　　Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

235.　　Defendants Valenti has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of his agency and employment relationship with Ocean.

236.　　The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Title VII.

237.　　The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Title VII.

238.　　Defendant Valenti's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

239.　　Valenti's retaliatory harassing and discriminatory conduct and other forms of retaliation described herein were open and notorious.

240.　　As a result of Valenti's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

241.      As a result of the retaliation, Plaintiffs Clarke, Horan and Prioli have incurred and continues to incur damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and work experience.


## COUNT XXI

### Intentional Discrimination in Violation of Section 1981
(by Plaintiffs against Defendant Haberbush)

242.      Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

243.      Defendant Haberbush has engaged in the pattern and practice of conduct described herein in violation of Section 1981.

244.      As described herein, defendant Haberbush was personally involved in the discriminatory conduct.

245.      As described herein, defendant Haberbush cause the infringement of the Plaintiffs' rights under Section 1981.

246.      As described herein, defendant Haberbush substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Section 1981.

247.      As a result of Haberbush's violation of Section 1981, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXII

### Intentional Discrimination in Violation of Title VII
(by Plaintiffs against Defendant Haberbush.)

248.      Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

249.     Defendant Haberbush has engaged in the pattern and practice of conduct described herein in violation of Title VII.

250.     As described herein, defendant Haberbush was personally involved in the discriminatory conduct.

251.     As described herein, defendant Haberbush cause the infringement of the Plaintiffs' rights under Title VII.

252.     As described herein, defendant Haberbush, substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Title VII.

253.     As a result of defendant Haberbush's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXIII

### Defendant Haberbush Aiding and Abetting Employment Discrimination at Ocean in Violation of N.J.S.A. §10:5-12e
(By Plaintiffs)

254.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

255.     Defendant Haberbush has engaged in the pattern and practice of gender harassment, discriminator conduct, and retaliation described herein, which caused injury to Plaintiffs in violation of New Jersey Law Against Discrimination.

256.     Through their conduct described herein defendant Haberbush aided, abetted, incite, compel and/or coerce the ongoing pattern and practice of gender harassment, discrimination, and retaliation at Ocean.

257.     Through his conduct described herein, defendant Haberbush knowingly and substantially assisted Ocean in its pattern and practice of racial harassment, discrimination and retaliation, and the resulting violation of New Jersey Law Against Discrimination.

258.     In his supervisory roles at OCDC, defendant Haberbush, possess knowledge, control, influence and decision-making authority regarding employment practices at OCDC. As such, defendant Haberbush was aware of his role in the part of the illegal ongoing pattern and practice of gender harassment, discrimination, and retaliation to Ocean, and at the time he knowingly and substantially assisted Ocean in its pattern and practice of gender harassment, discrimination, and retaliation resulting in the violation of New Jersey Law Against Discrimination.

259.     As a result of defendant Haberbush's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXIV

### Retaliation in Violation of Section 1981
By Plaintiffs against defendant Haberbush)

260.     Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

261.     Defendant Haberbush has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

262.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory

acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Section 1981.

263.     The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Section 1981.

264.     Haberbush's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

265.     As a result of defendant Haberbush's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

266.     As a result of Haberbush's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXV

### Retaliation in Violation of Title VII
By Plaintiffs against defendant Haberbush)

267.     Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

268.     Defendant Haberbush has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of their agency and employment relationship with Ocean.

269.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory

acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Title VII.

270.      The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Title VII.

271.      Haberbush's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

272.      As a result of defendant Haberbush's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

273.      As a result of Haberbush's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXVI

### Intentional Discrimination in Violation of Section 1981
(by Plaintiffs against Defendant Dickinson.)

274.      Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

275.      Dickinson has engaged in the pattern and practice of conduct described herein in violation of Section 1981.

276.      As described herein, defendant Dickinson was personally involved in the discriminatory conduct.

277.      As described herein, defendant Dickinson cause the infringement of the Plaintiffs' rights under Section 1981.

278.      As described herein, defendant Dickinson, substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Section 1981.

279.     As a result of Dickinson's violation of Section 1981, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXVII

### Intentional Discrimination in Violation of Title VII
(by Plaintiffs against Defendant Dickinson.)

280.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

281.     Dickinson has engaged in the pattern and practice of conduct described herein in violation of Title VII.

282.     As described herein, defendant Dickinson was personally involved in the discriminatory conduct.

283.     As described herein, defendant Dickinson cause the infringement of the Plaintiffs' rights under Title VII.

284.     As described herein, defendant Dickinson, substantially, and intentionally authorized, directed, or participated in the alleged discriminatory conduct in violation of Title VII.

285.     As a result of Dickinson's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXVIII

### Defendant Dickinson Aiding and Abetting Employment Discrimination at Ocean in Violation of N.J.S.A. §10:5-12e
(By Plaintiffs Against Defendant Dickinson)

286.     Plaintiffs repeats and re-alleges paragraphs 1 – 89 as if fully set forth herein.

287.       Dickinson has engaged in the pattern and practice of gender harassment, discriminator conduct, and retaliation described herein, which caused injury to Plaintiffs in violation of New Jersey Law Against Discrimination.

288.       Through his conduct described herein and Dickinson aided, abetted, incite, compel and/or coerce the ongoing pattern and practice of gender harassment, discrimination, and retaliation at Ocean.

289.       Through his conduct described herein, Dickinson knowingly and substantially assisted Ocean in its pattern and practice of racial harassment, discrimination and retaliation, and the resulting violation of New Jersey Law Against Discrimination.

290.       In his supervisory roles at OCDC, Dickinson, possess knowledge, control, influence and decision-making authority regarding employment practices at OCDC. As such, Dickinson was aware of their role in the part of the illegal ongoing pattern and practice of gender harassment, discrimination, and retaliation to Ocean, and at the time he knowingly and substantially assisted Ocean in its pattern and practice of gender harassment, discrimination, and retaliation resulting in the violation of New Jersey Law Against Discrimination.

291.       As a result of Dickinson's violation of Title VII, Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress. Furthermore, Plaintiffs have incurred and continue to incur economic damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXIX

### Retaliation in Violation of Section 1981
By Plaintiffs against Dickinson)

292.       Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

293.    Defendant Dickinson has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of his agency and employment relationship with Ocean.

294.    The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Section 1981.

295.    The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Section 1981.

296.    Defendant's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

297.    As a result of Dickinson's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

298.    As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

## COUNT XXX

### Retaliation in Violation of Title VII
By Plaintiffs against Dickinson)

299.    Plaintiff repeat and re-allege paragraphs 1 - 89 as if fully set forth herein.

300.     Defendant Dickinson has engaged in the pattern and practice of retaliatory harassment and discriminatory conduct described herein while acting in the course, scope, and furtherance of his agency and employment relationship with Ocean.

301.     The retaliatory hostile work environment and conduct described herein would not have occurred but for Plaintiff's complaints submitted to Ocean and/or EEOC regarding gender discrimination, Plaintiffs' opposition and/or refusal to participate in Ocean's discriminatory acts, and/or these Plaintiffs aided or encouraged other employees in the exercise or enjoyment of their rights granted and protected under Title VII.

302.     The retaliatory harassing and discriminatory conduct described herein was severe and pervasive enough to both alter Plaintiff's employment conditions and create an oppressive, hostile, intimidating, and abusive working environment in violation of Title VII.

303.     Defendant's retaliatory harassing and discriminatory conduct and other forms of retaliation constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

304.     As a result of Dickinson's actions these Plaintiffs have suffered and continue to suffer humiliation and embarrassment, as well as physical, mental and emotional distress.

305.     As a result of Ocean's intentional discrimination, the Plaintiffs Clarke, Horan and Prioli have suffered and continues to suffer damages including, but not limited to, medical expenses, opportunities for employment and advancement, loss of professional reputation, and physical, mental and emotional distress.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.     Enter a judgment that Defendants' acts and practices as set forth herein constitute violation of laws of the United States and the State of New Jersey;

2.  Issue a preliminary and permanent injunction prohibiting the Defendants' discriminatory conduct as necessary to prevent the current and future harm to Plaintiff;

3.  Award Plaintiff damages stemming from the discrimination in the form of lost benefits and lost wages, including back pay and front pay;

4.  Award Plaintiff compensatory, general, special, actual, and/or nominal damages;

5.  Award Plaintiff pre-judgment interest;

6.  Award Plaintiff punitive damages in an amount to be determined at trial which is sufficient to punish, penalize, and/or deter the Defendants' unlawful practices;

7.  Award Plaintiff attorneys' fees and costs associated with this action, including the fees and costs of experts;

8.  Grant Plaintiff such other and further relief as this Court deems necessary and proper.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues of fact and damages in this action.

Respectfully Submitted,

Dated:  January 4, 2018

Michael A. Nelson
Michael A. Nelson, P.C.
10 W. Main Street
Freehold, New Jersey 07728
(732) 276-5708

## VERIFICATION OF COMPLAINT BY PLAINTIFF SARAH PRIOLI

I, Sarah Prioli, do certify as follows:

1. The allegations of the foregoing Complaint are true to my personal knowledge. This Complaint is made in truth and good faith and without collusion for the causes set forth herein.
2. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.


Sarah Prioli, Plaintiff

Dated: 1/7/18

## VERIFICATION OF COMPLAINT BY PLAINTIFF NICOLE HORAN

I, Nicole Horan, do certify as follows:

- The allegations of the foregoing Complaint are true to my personal knowledge. This Complaint is made in truth and good faith and without collusion for the causes set forth herein.

- I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.


Nicole Horan, Plaintiff

Dated:  1/7/18

2

### VERIFICATION OF COMPLAINT BY PLAINTIFF ELIZABETH CLARKE

I, Elizabeth Clarke, do certify as follows:

5. The allegations of the foregoing Complaint are true to my personal knowledge. This Complaint is made in truth and good faith and without collusion for the causes set forth herein.

6. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Elizabeth Clarke, Plaintiff

Dated: 11/7/18

3

## LOCAL RULE 11.2 CERTIFICATION

   In accordance with Local Rule 11.2, I, Michael A. Nelson, attorney for the Plaintiffs in the above-referenced action, herby certify that to the best of my knowledge and belief, the matter in controversy is not the subject of any other action pending in any court or in any arbitration or administrative proceeding.

Dated: January 4, 2018

             Michael A. Nelson
             Attorney for Plaintiff